## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB65,<br><br>                    Plaintiff,<br><br>v.<br><br>Kunba, LLC, Robert Khomari, The New York City Department of Housing Preservation and Development, County Oil Company, Inc. and John Doe No. I through John Doe No. XXX, inclusive, the last thirty names being fictitious and unknown to Plaintiff, the persons or parties intended being the tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises described in the Complaint,<br><br>                    Defendants. | Case No. |

### VERIFIED COMPLAINT FOR MORTGAGE FORECLOSURE

Plaintiff Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2019-SB65 ("**Lender**") by and through its undersigned counsel, brings forth its cause of action against Defendants Kunba LLC ("**Borrower**"), Robert Khomari ("**Guarantor**"), The New York City Department of Housing Preservation and Development ("**DHPD**"), County Oil Company, Inc. ("**County Oil**") and John Doe No. I through John Doe No. XXX, and states as follows:

### PARTIES

1.      Wilmington Trust, National Association ("**Wilmington**") is a national banking association organized under federal law with its main office and principal place of business at 1100 North Market Street, Wilmington, Delaware 19890.  Wilmington serves as trustee for Lender,

which is a trust that has elected to be treated as a real estate mortgage investment conduit ("**REMIC**") under the Internal Revenue Code of 1986 ("**Trust**"). With respect to the loan transaction that is the subject of this action, KeyBank National Association acts as the Special Servicer and authorized agent for Lender.

2.      KeyBank and Lender are parties to that certain Limited Power of Attorney dated as of July 29, 2024 (the "**POA**"). A true and accurate copy of the POA is attached hereto as **Exhibit A**.

3.      The POA gives KeyBank the authority to take all actions necessary to, among other things, "demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee" including the amounts due and owing under the Loan Documents (defined below). *See* POA, at ¶ 1.

4.      The POA further extends KeyBank the authority for, through counsel, "foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure." *See* POA, at ¶ 1.

5.      KeyBank is the appointed Special Servicer for Lender, which gives KeyBank the authority to act on behalf of Lender. However, from time to time, and as needed, formal, limited power of attorneys are executed (such as the one attached as Exhibit A).

6.      At all times relevant for this litigation, KeyBank had (and continues to have) the authority to act on behalf of Lender.

7.      Borrower is a limited liability company organized and existing under the law of the State of New York. Borrower has an address of 36 West 37th Street, New York, New York 10018.

101490620

8.      Guarantor is an individual and citizen of the State of New York.  Guarantor has an address of 19 Hillside Avenue, Roslyn Heights, New York 11577.

9.      DHPD is a New York City agency and has its principal place of business at 100 Gold Street, New York, New York 10038.  DHPD is named as a party-defendant herein by virtue of any liens upon the Property, including a Judgment in Bronx County for $1,550.00 against Borrower filed on August 24, 2022 in Index No. LT309785/22, and any possible Orders issued in Index No. 80515/04, Index No. 30425/09, Index No. 36062/16, Index No. 50324/19, and Index No. 215828/22, which liens, if any, are subordinate to the lien of Lender's mortgage sought to be foreclosed herein.

10.     County Oil Company has its principal place of business at 65 South 11th Street, Suite 1E, Brooklyn, New York 11249 and is incorporated in the State of New York.  County Oil is named as a party-defendant herein by virtue of any liens upon the Property, including a UCC Financing Statement filed/recorded February 11, 2020 in Bronx County as CRFN 2020000054709, which liens, if any, are subordinate to the lien of Lender's mortgage sought to be foreclosed herein.

11.     Defendants John Does I through XXX are currently unknown to Plaintiff, but, on information and belief, are tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the Property.

## JURISDICTION AND VENUE

12.     This is a civil action over which this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

13.     In *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) and *Americold Realty Tr. V. Conagra Foods, Inc.*, 577 U.S. 378 (2016), the United States Supreme Court confirmed a long-standing rule of jurisprudence than an express, "traditional" trust is not a juridical person—it is a

fiduciary relationship—and, therefore, for purposes of diversity jurisdiction, only the citizenship of the trustee is considered. Courts sitting in the Second Circuit have adhered to the principles set forth in *Navarro* and *Americold* and held that the citizenship of the trustee of a traditional trust litigating in its own right, controls for the purposes of diversity jurisdiction. *See, e.g.*, *Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) ("because the party trusts here are not organized according to state law as distinct juridical entities but, rather, are traditional trusts, establishing only fiduciary relationships . . . it is the trustees' citizenship that must determine diversity"); *Wilmington N.A. v. 2150 Joshua's Path, LLC*, No. 13-CV-1598, 2017 WL 4480869, *3 (E.D.N.Y. 2017) (affirming that an express common law trust is deemed to have the citizenship of its trustee); *SPV-LS, LLC v. Bergman*, No. 15 CV 6231, 2019 WL 2257244, *16 (E.D.N.Y. 2019) ("For traditional trusts, it is the citizenship of the trustees holding legal right to sue on behalf of the trusts that is relevant to jurisdiction")

14.     Plaintiff is a traditional trust, and its trustee, Wilmington, is the real party in interest. Plaintiff's trustee, Wilmington, brings this action in its own name and in its capacity as trustee. Wilmington is the owner of a pool of mortgage loans, which includes the loan that is the subject of this lawsuit, and holds these assets in trust for the benefit of the registered holders of "Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB65." This trust relationship was organized as a common law trust under the laws of the State of New York and is governed by a Pooling and Servicing Agreement dated as of August 1, 2019 (the "**PSA**"). The New York Civil Practice Law and Rules provides that a trustee of an express trust may sue in its own name. *See* N.Y. CPLR § 1004. Under the PSA, Wilmington holds trust assets for the exclusive benefit of the certificate holders. It is Wilmington, acting through its loan servicer, KeyBank National Association, who has dominion over the loans and

the right and authority to defend lawsuits and file lawsuits with respect to trust assets. The beneficiaries of the trust (i.e., the certificate holders) have no such authority, nor do the beneficiaries of the trust have any ownership interest in the trust's property.

15.      For purposes of diversity jurisdiction, Plaintiff has the citizenship of its trustee. Plaintiff's trustee, Wilmington is a national banking association. As stated in *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), a national banking association is a citizen of the state where the bank has its main office. Wilmington's main office is in Wilmington, Delaware. Accordingly, Plaintiff is a citizen of Delaware for purposes of federal diversity jurisdiction.

16.      Defendant Borrower is a limited liability company which, for diversity jurisdiction purposes, has the citizenship of its members.

17.      There is one member of the Borrower, Guarantor.

18.      Guarantor is an individual and a citizen and resident of the state of New York, with an address of 19 Hillside Avenue, Roslyn Heights, New York 11577.

19.      Therefore, Borrower's citizenship for federal diversity jurisdiction purposes is New York.

20.      Guarantor is an individual and citizen and resident of the state of New York, therefore Guarantor's citizenship for federal diversity jurisdiction purposes is New York.

21.      DHPD is a New York City agency and a citizen and resident of the state of New York.

22.      County Oil is a New York corporation with a principal place of business in New York. County Oil is a citizen and resident of the state of New York.

23.      There exists complete diversity between Lender (Delaware citizenship) and all Defendants (New York citizenship).

101490620

24.     Borrower is indebted to Lender pursuant to a commercial mortgage loan transaction, as described in more detail below. The outstanding balance on the loan exceeds $75,000.00. Accordingly, the amount in controversy is greater than the $75,000.00 threshold for diversity jurisdiction.

25.     The action properly lies in the Southern District of New York as the property which is the subject of this action lies in this judicial district, and all or substantially all of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(a)(2). Further, the assignor of Plaintiff, and Borrower, consented to venue in this judicial district pursuant to the operative documents which are the subject of this suit. 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

### *The Loan Transaction*

26.     On or about February 7, 2019, CPC Mortgage Company LLC ("**Original Lender**") made a $1,750,000.00 loan (the "**Loan**") to Borrower.  In connection with the Loan, Borrower executed that certain Loan Agreement – SBL effective as of February 7, 2019, by and between Borrower and Original Lender (the "**Loan Agreement**").  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit B**.

27.     The Loan is evidenced by that certain New York Consolidated, Amended and Restated Note dated as of February 7, 2019 (the "**Note**") by and between Borrower and Original Lender in the original principal amount of $1,750,000.00[1].  A true and correct copy of the Note is attached hereto as **Exhibit C**.

---

[1] The Note consolidated two prior notes consisting of: (a) that certain Substitute Note A in the original principal amount of $1,075,000.00 made by Kunba LLC to Signature Bank, dated February 7, 2019; and (b) that certain Gap Note Fixed Rate – SBL in the original principal amount of $675,000.00 made by Kunba LLC to CPC Mortgage Company LLC, dated February 7, 2019.

101490620

28.     The indebtedness owed under the Note is secured by Borrower's real property, improvements thereon and personal property, with a street address of 430 East 162nd Street, Bronx, New York 10451 (as more particularly described in the Security Instrument, collectively, the "**Property**").

29.     Lender's lien on the Property is evidenced by, among other things:

(a) Substitute Mortgage A in the original principal amount of $1,075,000.00 made by Kunba LLC to Signature Bank, dated as of February 7, 2019, and recorded with the City Register of Bronx County (the "**Register**") on February 25, 2019 as CRFN 2019000063492 ("**Substitute Mortgage A**");

(b) that certain Gap Multifamily Mortgage, Assignment of Rents and Security Agreement in the original principal amount of $675,000.00 made by Kunba LLC to CPC Mortgage Company LLC, dated as of February 7, 2019, and recorded with the Register on February 25, 2019 as CRFN 20190000634495 ("**Gap Mortgage**");

(c) that certain Consolidation, Extension and Modification Agreement in the original principal amount of $1,750,000.00 made by Kunba LLC to CPC Mortgage Company LLC, dated as of February 7, 2019, and recorded with the Register on February 25, 2019, as CRFN 2019000063497, which mortgage consolidated Substitute Mortgage A and the Gap Mortgage (the "**Security Instrument**").

i.   Pursuant to Section 4 of the Security Instrument, Borrower and Lender agreed that the covenants and agreements of the consolidated mortgage are the terms of the mortgage set forth in Exhibit C to the Security Instrument (the "**Consolidated Mortgage**").  A true and accurate copy of the Security Instrument, including the Consolidated Mortgage, is attached hereto as

101490620

**Exhibit D**.  At the time of recording, all requisite New York State recording taxes were paid thereon.

30.    To further secure certain obligations under the Loan Documents, Guarantor executed that certain Guaranty, dated to be effective as of February 7, 2019, pursuant to which Guarantor guaranteed certain of Borrower's obligations, as described therein.  A true and accurate copy of the Guaranty is attached hereto as **Exhibit E**.

31.    Original Lender further perfected its interest in the Property by virtue of a UCC Financing Statement dated February 7, 2019, and recorded with the Register on March 7, 2019, as CRFN 2019000076023 (the "**UCC**").  A true and accurate copy of the UCC is attached hereto as **Exhibit F**.

### _Assignment of the Loan to Lender_

32.    On February 7, 2019, Original Lender assigned the Loan, Loan Agreement, Note, Security Instrument, Guaranty, and all other documents executed in connection with the Loan (collectively, the "**Loan Documents**") to Federal Home Loan Mortgage Corporation, as evidenced by: (a) the Allonge to the Note (part of Exhibit C); (b) that certain Assignment of Consolidated Security Instruments; and (c) that certain Omnibus Assignment.  Copies of the assignments to Federal Home Loan Mortgage Corporation are attached hereto as **Exhibit G**.

33.    On August 29, 2019, Federal Home Loan Mortgage Corporation assigned the Loan Documents to Lender, as evidenced by: (a) the Allonge to the Note (part of Exhibit C); (b) that certain Assignment of Mortgage; and (c) that certain UCC Financing Statement Amendment (Assignment).  Copies of the assignments to Lender are attached hereto as **Exhibit H**.

34.    Lender is the current owner and holder of the Loan and Loan Documents and all of Original Lender's right, title and interest in, to and under the Loan Documents.

35.     Prior to the commencement of this action, following the assignments set forth herein, Lender has been in exclusive possession of the original Loan Documents and has not transferred the same to any other person or entity.

***Borrower's Default Under the Loan Documents***

36.     Under the terms of the Loan Documents, on or before March 1, 2024 (the "**Maturity Date**"), Borrower was required to pay to Lender the entire outstanding Indebtedness and all other amounts due and owing under the Note and other Loan Documents.

37.     Borrower defaulted under the Loan Documents due to Borrower's failure to pay the entire outstanding Indebtedness and all other amounts due and owing under the Note and other Loan Documents by the Maturity Date.

38.     As a result of Borrower's default under the Note and Loan Documents, the amounts owed under the Loan are currently accruing interest at the Default Annual Interest Rate as that term is defined in the Note.

39.     By letter dated August 7, 2024 (the "**Notice of Default**"), Lender notified Borrower and Guarantor of Borrower's default under the Loan Documents due to Borrower's failure to pay the entire outstanding Indebtedness and all other amounts due and owing under the Note and other Loan Documents by the Maturity Date.  A true and correct copy of the Notice of Default sent to Borrower is attached hereto as **Exhibit I**.

40.     Borrower has failed to repay the indebtedness in full despite demand from Lender. Thus, Borrower remains in default under the terms of the Note and Loan Documents.

***Amounts Due Under the Loan Documents***

41.     As of January 31, 2025, the unpaid amounts due and owing under the Note include the principal balance of $1,570,182.04, together with interest, at the Default Rate, and any and all

fees and costs incurred by Lender, both to date and hereafter, in connection with the collection of the amounts due and owing under the Loan Documents for the protection, preservation, and realization of the Property, including processing fees, late charges, inspection fees, forced place insurance fees, environmental fees, appraisal fees, expenses, filing fees, administrative fees, attorneys' fees, and costs incurred in connection with the issuance of third-party reports in connection with the Property, less any funds paid by Borrower but not yet applied to the debt by Lender, and any other amounts due and owing under the Loan Documents

### ***Right to Possession and Rents***

42.    Under Section 3(c)(i) of the Security Instrument, upon Borrower's default under the Loan Documents, Lender is entitled to take possession of the Property and to collect and receive the rents and the value of the use and occupation of the Property.

43.    In addition, under Section 3(b)(iii) of the Security Instrument, the license to collect rents granted to Borrower automatically terminated upon Borrower's default, and Lender has the right to enter upon the Property and collect all rents, among other things.

44.    Further, under Section 3(c)(ii) of the Security Instrument, upon an Event of Default, Lender may apply for the appointment of a receiver for the Property, without notice and without the adequacy of the security for the amounts owed under the Note.

45.    Lender is entitled to an order directing that all rents, issues, proceeds, revenues, profits, and income from the Property be remitted to Lender in accordance with the terms of the Security Instrument and directing that any such amounts be used to reduce the indebtedness described above.

101490620

_**Right to Foreclosure**_

46.     Under the terms of the Loan Documents, including Section 31(a) of the Security Instrument, upon an Event of Default, Lender has the right to institute a proceeding for foreclosure and thus is entitled to an order of the Court that the Security Instrument be foreclosed, that the lien provided therein be declared as a first and prior lien on the Property, and that Lender be granted the right of immediate possession of the Property.

47.     No other action has been brought to recover any part of the debt under the Security Instrument, Note, or other Loan Documents.

48.     The Defendants herein have or claim to have some interest in, or lien upon, the Property or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of the Security Instrument and is subject and subordinate thereto. As such, Defendants should assert whatever interest they have or may claim to have in the Property.

49.     Lender may not be deemed to have waived, altered, released, or changed its election to foreclose by reason of any payment made after the date of commencement of this action of any and all of the defaults identified herein.

50.     Lender specifically reserves the right to pursue a temporary injunction, to seek appointment of a receiver, or to seek other relief with respect to its rights under the Loan Documents.  Pursuant to N.Y. Real Prop. Acts. Law §1371, Lender reserves the right to move the Court to enter final judgment against Borrower or any other liable party, including Guarantor, for any residue of the debt under the Note and other Loan Documents remaining unsatisfied after the foreclosure sale of the Property is completed.

**WHEREFORE**, Lender respectfully requests that the Court enter judgment in favor of Lender for foreclosure of the Property as follows:

A.    Finding that Lender has a first and best lien on the Property;

B.    Finding that Borrower has defaulted upon the terms and conditions of the Loan Documents;

C.    Ordering that Lender has the legal right and is authorized to foreclose on the Property:

    (i)    In one or more parcels according to law together with the fixtures and articles of personalty upon the Property;

    (ii)    Subject to zoning restrictions and ordinances adopted by any municipality or other governmental authority, and violations thereof;

    (iii)    Subject to any state of facts that an accurate survey would show;

    (iv)    Subject to covenants and restrictions of record, if any;

    (v)    Subject to violations, if any, noted by any federal, state, city, town or village agency having authority over the Property;

C.    Finding that such foreclosure will vest in the purchaser thereat free and clear title to the Property, free of any and all interests that are or might be asserted by the Defendants to this Complaint;

D.    Ordering that Lender has the right to credit bid at such foreclosure sale any and all amounts due to Lender under the Note and other Loan Documents;

E.    Ordering and directing that the Sheriff of Bronx County, or any referee appointed in this action, foreclose the Property and deliver title via a Sheriff's Deed or Referee's Deed, and bill of sale, as appropriate, to the successful bidder at such foreclosure;

F.    Ordering and directing that the proceeds of the sale be applied as follows:

101490620

(i)     to payment of the expenses of the sale;

(ii)    to the payment of the debt owed to Lender under the Note and other Loan Documents;

(iii)   to the payment of foreclosure costs and other accrued costs in connection with the foreclosure, including attorney's fees;

(iv)    to the payment, at Lender's option, of any real property taxes that may be due and unpaid in connection with the Property;

(v)     to the payment, at Lender's option, of all other assessments against or attributable to the Property;

(vi)    the surplus, if any, to the payment of the debts secured by junior liens on the Property and then, to Borrower, in accordance with further order of the Court;

G.    Ordering that Borrower has no right of redemption or reinstatement with respect to the Property;

H.    Finding that Lender has preserved its rights to pursue any deficiency that may exist under the Note or other Loan Documents after application of the proceeds of the foreclosure sale pursuant to N.Y. Real Prop. Acts Law §1371 and may move the Court to enter final judgment against Borrower for such deficiency; and

I.    Ordering all further relief the Court deems just, proper and equitable.

101490620

Dated:  New York, New York
        February 19, 2025

POLSINELLI PC


By:  */s/  Carter J. Wallace*
        AARON P. DAVIS
        CARTER J. WALLACE
        600 Third Avenue, 42nd Floor
        New York, New York 10016
        (212) 803-9914
        cwallace@polsinelli.com

        ATTORNEYS FOR PLAINTIFF

14

## VERIFICATION

Parker H. Walet, being duly sworn, says that he is a Real Estate Analyst for KeyBank National Association, the servicer for Lender in this action, that he has read the foregoing Verified Complaint and said Verified Complaint is true to his own knowledge except as to matters therein stated to be alleged on information and belief and that as to those matters, he believes them to be true.

STATE OF _Kansas_          )
                           ) ss.
COUNTY OF _Johnson_        )

On this _19TH_ day of _February_ , 20 _25_, to me personally known, appeared _Parker Walet_ who, being by me duly sworn did say that he/she is the _Real Estate Analyst_ [title] of _KeyBank N.A._, a _Special Servicer_ , and that said instrument was signed and delivered on behalf of said _Special Servicer_ [type of entity] by authority of its _Members_ [board of directors, members, etc.], as the free act and deed of said _Special Servicer_ [type of entity] acting with full power and authority to so bind the _Trust_ [type of entity].

In Testimony Whereof, I have hereunto set my hand and affixed my official seal the day and year first above written.

NOTARY PUBLIC

My Commission Expires:
_2.14.2028_
[SEAL]

ETHAN J MEYER
Notary Public - State of Kansas
My Appointment Expires _2.14.28_

## CERTIFICATE OF CONFORMITY

The undersigned does hereby certify that he is an attorney at law duly admitted to practice in the State of Kansas; that he is a person duly qualified to make this certificate of conformity pursuant to Section 2309(c) of the Civil Practice Law and Rules of the State of New York; that he is fully acquainted with the laws of the State of Kansas pertaining to oaths and affirmations; that the foregoing acknowledgment of Parker H. Walet named in the foregoing instrument taken before Ethan J. Meyer, a Notary Public in the State of Kansas, being the state in which it was taken; and that it duly conforms with such laws and is in all respects valid and effective in such state.

Dated: February 24, 2025
Kansas City, Missouri

Bradley Gardner

16

101490620