UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass Through Certificates, Series 2019-SB65,<br><br>*Plaintiff*,<br><br>v.<br><br>Kunba, LLC, Robert Khomari, The New York City Department of Housing Preservation and Development, County Oil Company, Inc. and John Doe No. I through John Doe No. XXX, inclusive, the last thirty names being fictitious and unknown to Plaintiff, the persons or parties intended being the tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises described in the Complaint,<br><br>*Defendants*. | Case No. 1:25-cv-01696-DLC<br>_____ |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS KUNBA LLC AND ROBERT KHOMARI'S MOTION TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………………………ii

BACKGROUND……………………………………………………………………………... 1

ARGUMENT………………………………………………………………………………......2

I. THE COMPLAINT SHOULD BE DISMISSED PURSUANT
TO RULE 12(B)(1)………………………………………………………………………2

       A. THIS COURT LACKS SUBJECT MATTER JURISDICTION
       BASED ON LACK OF DIVERSITY……………................................... 2

       B. PLAINTIFF LACKS STANDING TO MAINTAIN
       THIS ACTION…………………………………………………………............4

II. PLAINTIFF FAILS TO STATE A CLAIM PURSUANT TO RULE 12(B)(6)……….. 8

       A. PLAINTIFF'S ALLEGATIONS CONTRADICT EVIDENCE
       ATTACHED TO THE COMPLAINT…………………………………...8

       B. PLAINTIFF FAILS TO ALLEGE BREACH OF DEFENDANT
       KHOMARI'S LIMITED GUARANTY……………………………………9

       C. PLAINTIFF FAILS TO ALLEGE A BASIS FOR A
       DEFICIENCY JUDGMENT……………………………………………10

CONCLUSION…………………………………………………………………………..14

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Americold Realty Trust v. Conagra Foods, Inc.*,
    577 U.S. 378 (2016)……………………………………………..…2, 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………….........8

*Calcano v. Swarovski N. Am. Ltd.*,
    36 F.4th 68 (2d Cir. 2022)……………….....................................4

*Caterpillar Inc. v. Lewis*,
    519 U.S. 61 (1996)…………….........................................................2

*Deutsche Bank Natl. Trust Co. v. Brewton*,
    142 A.D.3d 683, 37 N.Y.S.3d 25 (2d Dep't 2016)…………………………..4

*Federal Natl. Mtge. Assn. v. Hollien*,
    198 A.D.3d 615, N.Y.S.3d 572 (2d Dep't 2021)………………….……6

*HSBC Bank USA, N.A. v. Roumiantseva*,
    130 A.D.3d 983 (2d Dep't 2015)……… ……....................................4, 5

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)… ………….........................................8

*International Pathways Inc. v. University of Queensland*,
    193 A.D.3d 459, 141 N.Y.S.3d 709 (1st Dep't 2021)…………….....................13

*JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips South Beach*,
    No. 10–20636–CIV, 2010 WL 4317000, at *1 (S.D. Fla. Oct.22, 2010) …….3, 4

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)……………………………………………………...2

*LNV Corp. v. Almberg*,
    194 A.D.3d 703, 143 N.Y.S.3d 587 (2d Dep't 2021)…………………………6

*Navarro Savings Association v. Lee*,
    446 U.S. 458 (1980)………………………………………………...............3

*Raymond James Bank, NA v. Guzzetti*,
    202 A.D.3d 841 (2d Dep't 2022) ………………………………………..5

*U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Desrosiers*,
  No. 17-CV-7338 (JMW), 2021 WL 5630899, at *1
  (E.D.N.Y. Dec. 1, 2021)……………………………………………..…..3

*Wells Fargo Bank, N.A. v. Mitselmakher*,
  216 A.D.3d 1056 (2d Dep't 2023)…………………………........................5

*Wells Fargo Bank, N.A. v. Smith*,
  197 A.D.3d 532 (2d Dep't 2021).....................................................................4

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
  544 F. Supp. 2d 199 (S.D.N.Y. 2008)……………………………..............8

**Statutes**

28 U.S.C. § 1332……………………………………………………….....................1, 2

N.Y. UCC § 1-201………………………………………………………………….…...4

N.Y. UCC § 3-202 …………………………………………………………………………5, 6

RPAPL § 1371………………………………………………………………....…....10, 11

**Other Authorities**

FRCP 12……………………………………………………………………….……passim

FRCP 8…………………………………………………………………………....……8, 9

Defendants Kunba, LLC ("Kunba") and Robert Khomari ("Khomari," each a "Defendant" and collectively, the "Defendants"), by and through their undersigned counsel, respectively submit this memorandum of law in support of their motion to dismiss the verified complaint filed by Plaintiff Wilmington Trust, National Association ("Plaintiff") (Doc. No. 1, "Complaint" or "Compl."). For the reasons that follow, pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) this Court lacks subject matter jurisdiction due to lack of diversity and Plaintiff's standing, and pursuant to Rule 12(b)(6) Plaintiff has failed to state a claim upon which relief can be granted.

## BACKGROUND

As alleged in the Complaint, Plaintiff has brought this action against Defendants for a $1,750,000 loan pursuant to a Loan Agreement, Note, and Guaranty dated February 7, 2019.[1] (Compl., Doc. No. 1 at ¶¶ 26-27; Doc Nos. 1-2 (Ex. B), 1-3 (Ex. C), 1-5 (Ex. E).)[2] Plaintiff claims that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) by alleging that Plaintiff, as trustee of a real estate mortgage investment conduit ("REMIC"), is a national banking association organized under federal law with its main office in Delaware, and Defendants are citizens of New York. (Compl. ¶¶ 1, 7-8, 12.) The Complaint alleges that Plaintiff is the real party in interest, subject to a line of assignments of the underlying Loan Documents, evidenced in part by allonges to the Plaintiff. (*Id*. ¶¶ 32-35.) However, Plaintiff fails to allege how the purported allonges are affixed to the Note and a certain allonge has not even been signed. (Doc. No. 1-3 (Ex. C).)

---

[1] Unless otherwise defined, capitalized terms are as defined in the Complaint at Document No. 1.
[2] Hereinafter, citations to the Complaint Exhibits are as referenced on the docket at Document Nos. 1-1 (Ex. A)—1-9 (Ex. I).

1

While Plaintiff now alleges the principal balance owed under the loan is $1,570,182.04, in the Notice of Default Plaintiff allegedly sent to Defendants on August 7, 2024, the principal balance claimed is $618,357.43. (Compl. ¶ 41, 1-9 (Ex. I).)   The alleged Notice of Default also stated that the full loan amount was due on March 12, **2021** (Doc. No. 1-9 (Ex. I)), which contradicts the allegations and the documents that provide for a March 1, **2024** maturity date (Compl. ¶ 36).  Plaintiff has not provided an explanation for these major discrepancies.

Moreover, the Loan Agreement and Guaranty make clear that Defendants have limited personal liability in particular circumstances, and have no liability on the Loan Amount.  (Doc Nos. 1-2 (Ex. B), 1-5 (Ex. E).)  Indeed, the Plaintiffs fail to make any specific allegations against Defendant Khomari as the Guarantor.

## ARGUMENT

### I.  THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1)

#### A. This Court Lacks Subject Matter Jurisdiction Based on Lack of Diversity

The burden of establishing subject matter jurisdiction rests squarely with the party asserting it.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Pursuant to 28 U.S.C. § 1332(a), subject matter jurisdiction based on diversity means that no plaintiff may share citizenship with any defendant. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  For purposes of diversity jurisdiction, the citizenship of a trust depends on its structure and the real party in interest.  *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378 (2016).

The Supreme Court has made clear that when the trust is a traditional trust -- where the trustee possesses the power to control, hold, and dispose of the trust's assets -- then the courts may look to the citizenship of the trustee. *Id*. at 383. However, where the trust resembles a business entity or unincorporated association and acts a mere conduit -- as is typical with real estate

2

investment vehicles -- the trust's citizenship includes all its members or beneficial owners. *Id. at* 382 (2016) (holding that real estate investment trust's members included its shareholders for purposes of diversity jurisdiction). "[J]ust because the entity happens to call itself a trust," does not limit that entity's membership to its trustee for diversity purposes. *Id*. at 383.

In this case, Plaintiff alleges that it is the trustee of a REMIC trust, which is a real estate mortgage investment conduit. (Compl. ¶ 1.) Plaintiff's conclusory allegation that it "is a traditional trust" (*id.* at ¶ 14), is not sufficient to establish that it is the sole party in interest for diversity purposes. *See JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips South Beach,* No. 10–20636–CIV, 2010 WL 4317000, at *4 (S.D. Fla. 2010) (granting motion to dismiss for lack of diversity based on citizenship of REMIC trust certificate holders and rejecting argument that REMIC trusts "are creatures of federal income tax law and warrant a distinct rule for establishing diversity" when the nature of the claim was to foreclose a mortgage on real property). While Plaintiff references a Pooling and Servicing Agreement ("PSA") to support its allegations of its trust structure, that PSA is not attached to the Complaint. Indeed, the Plaintiff does not even offer an excerpt from the PSA demonstrating the actual structure of the trust. *See U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Desrosiers*, No. 17-CV-7338 (JMW), 2021 WL 5630899, at *3 (E.D.N.Y. Dec. 1, 2021) (dismissing for lack of subject matter jurisdiction and finding that "[c]ontrary to Plaintiff's contention that its authority under the Trust Agreement is 'immaterial,' the scope of its authority under the Trust Agreement is indeed the core factor of the diversity analysis."). The Court must still ensure that Plaintiff is a real party in interest, which turns on whether Plaintiff, as Trustee, "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.'" *Navarro Savings Association v. Lee*, 446 U.S. 458, 464 (1980).

3

Plaintiff fails to allege the citizenship of any of the trust's beneficiaries, investors, or certificate holders, and does not establish whether the trustee alone is the real party in interest. Defendants have reason to believe that certificate holders may include citizens of New York, which would be fatal to diversity jurisdiction. *See JPMCC 2005-CIBC13 Collins Lodging,* LLC, 2010 WL 4317000 at *4 ("As it is undisputed there are registered holders of JPMCC Certificates who share New York and Delaware citizenship with [Defendant], the complete diversity required for federal subject matter jurisdiction does not exist.").

Accordingly, this action must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### B. Plaintiff Lacks Standing to Maintain this Action

At the pleading stage, a plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest that [he or she] has standing to sue." *Calcano v. Swarovski N. Am. Ltd*., 36 F.4th 68, 75 (2d Cir. 2022) (internal quotation marks and citation omitted). As is well-settled, a plaintiff in a mortgage foreclosure action has standing to prosecute an action only when, at the time the action was commenced, it was either the holder or the assignee of the underlying loan documents. *See Wells Fargo Bank, N.A. v. Smith*, 197 A.D.3d 532, 533 (2d Dep't 2021). A "holder" is the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession. *Deutsche Bank Natl. Trust Co. v. Brewton*, 142 A.D.3d 683, 684, 37 N.Y.S.3d 25 (2d Dep't 2016) (quoting UCC 1-201(b)(21)). Here, Plaintiff lacks standing for failure to properly allege assignment of the Loan.

In the mortgage foreclosure case *HSBC Bank USA, N.A. v. Roumiantseva*, 130 A.D.3d 983, 985 (2d Dep't 2015) ("*Roumiantseva*"), the Second Department affirmed summary judgment in favor of defendants because a "purported endorsement" to the promissory note which was

4

"attached by a paperclip, was not so firmly affixed to the note as to become a part thereof" and, as such, "the purported endorsement did not constitute a valid transfer of the underlying note to the plaintiff." *Id*. (citing N.Y. UCC § 3-202). N.Y. UCC § 3-202 provides as follows:

> (1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.
> (2) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.
> (3) An indorsement is effective for negotiation only when it conveys the entire instrument or any unpaid residue. If it purports to be of less it operates only as a partial assignment.
> (4) Words of assignment, condition, waiver, guaranty, limitation or disclaimer of liability and the like accompanying an indorsement do not affect its character as an indorsement.

Further, Comment 3 to N.Y. UCC § 3-202 states that "[s]ubsection (2) follows decisions holding that a purported indorsement on a mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation," and that "[t]he indorsement must be on the instrument itself or on a paper intended for the purpose which is so firmly affixed to the instrument as to become an extension or part of it." N.Y. UCC § 3-202, comment 3. Such a "firmly affixed" paper "is called an allonge." *Id.*

*Roumiantseva* is now well-settled and its holding has been repeatedly reaffirmed and applied by New York courts. *See, e.g., Wells Fargo Bank, N.A. v. Mitselmakher*, 216 A.D.3d 1056, 1058(2d Dep't 2023) ("Here, the plaintiff failed to make a prima facie showing that it had standing to commence this action. The plaintiff attached to the complaint … a copy of the consolidated note and an allonge, endorsed in blank…. However, the plaintiff did not demonstrate that the purported allonge, which was on a piece of paper completely separate from the note, was so firmly affixed thereto as to become a part thereof, as required by UCC 3-202(2).") (internal quotations omitted); *Raymond James Bank, NA v. Guzzetti*, 202 A.D.3d 841, 843 (2d Dep't 2022) ("[T]he plaintiff

5

failed to establish, prima facie, that it had standing to commence this action. Although the plaintiff attached to the complaint copies of the note and an undated purported allonge endorsed in blank, the plaintiff did not demonstrate that the purported allonge, which was on a piece of paper completely separate from the note, was 'so firmly affixed thereto as to become a part thereof,' as required by UCC 3- 202(2)."); *Federal Natl. Mtge. Assn. v. Hollien*, 198 A.D.3d 615, 617-18, 154 N.Y.S.3d 572 (2d Dep't 2021) (finding that where "the plaintiff failed to establish that the purported allonge was so firmly attached to the note as to become a part thereof," the lender "failed to establish, prima facie, its standing to commence this foreclosure action"); *LNV Corp. v. Almberg*, 194 A.D.3d 703, 704, 143 N.Y.S.3d 587 (2d Dep't 2021) ("[A]s the defendants correctly contend, the plaintiff did not submit any evidence to indicate that the purported allonges were so firmly affixed to the note so as to become a part thereof (*see* UCC 3-202[2]")).

Based on the following allegations in the Complaint with respect to the assignment of the Note, Plaintiff failed to allege how the purported allonges are affixed to the Note (if at all):

- "On February 7, 2019, Original Lender assigned the Loan, Loan Agreement, Note, Security Instrument, Guaranty, and all other documents executed in connection with the Loan (collectively, the "Loan Documents") to Federal Home Loan Mortgage Corporation, as evidenced by: (a) the Allonge to the Note (part of Exhibit C); (b) that certain Assignment of Consolidated Security Instruments; and (c) that certain Omnibus Assignment. Copies of the assignments to Federal Home Loan Mortgage Corporation are attached hereto as Exhibit G." (Compl. ¶ 32)

- "On August 29, 2019, Federal Home Loan Mortgage Corporation assigned the Loan Documents to Lender, as evidenced by: (a) the Allonge to the Note (part of Exhibit C); (b) that certain Assignment of Mortgage; and (c) that certain UCC Financing Statement Amendment (Assignment). Copies of the assignments to Lender are attached hereto as Exhibit H." (Compl. ¶ 33)

- "Lender is the current owner and holder of the Loan and Loan Documents and all of Original Lender's right, title and interest in, to and under the Loan Documents." (Compl. ¶ 34)

- "Prior to the commencement of this action, following the assignments set forth herein, Lender has been in exclusive possession of the original Loan Documents and has not transferred the same to any other person or entity." (Compl. ¶ 35)

6

Nowhere in the Complaint did Plaintiff allege the allonges are "so firmly affixed to the" Note so as to "become an extension or part" of the Note, thus Plaintiff lacks standing.

Furthermore, the allonges upon which Plaintiff relies on in connection with the alleged assignment of the Note to Lender are deficient for missing a critical signature. The Complaint states that the "Note consolidated two prior notes consisting of: (a) that certain Substitute Note A in the original principal amount of $1,075,000.00 made by Kunba LLC to Signature Bank, dated February 7, 2019; and (b) that certain Gap Note Fixed Rate — SBL in the original principal amount of $675,000.00 made by Kunba LLC to CPC Mortgage Company LLC, dated February 7, 2019." (Compl. ¶ 27, n. 2). The allonge attached as the final page of Exhibit C of the Complaint, dated August 23, 2019, states it is to be "attached to and become part of that Gap Note dated February 7, 2019 made by KUNBA LLC, a New York limited liability company to CPC MORTGAGE COMPANY LLC, in the principal sum of $675,000.00" (Doc. No. 1-3 (Ex. C) at p. 16). However, that allonge is not signed. The allonge must be endorsed in order to be valid. This lack of signature means that the Gap Note in the original principal amount of $675,000 was not assigned to the Plaintiff, the Plaintiff is not the legal holder of the alleged Loan, and Plaintiff therefore lacks standing.[3]

---

[3] Separately, the caption to the Complaint fails to name the entity that is actually prosecuting this action. Plaintiff has alleged that KeyBank National Association ("KeyBank") "acts as the Special Servicer and authorized agent for Lender" and through the Power of Attorney attached as Exhibit A to the Complaint, KeyBank has "the authority for, through counsel, 'foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure.'" (Compl. ¶¶ 1, 4.) The Verification to the Complaint is signed by a Real Estate Analyst at KeyBank. Even if Wilmington Trust, National Association is the named party in interest, the Special Servicer should also be named as it is the entity with full authority to bring the action, and is in fact bringing this action.

II.     **PLAINTIFF FAILS TO STATE A CLAIM PURSUANT TO RULE 12(B)(6)**

A. **Plaintiff's Allegations Contradict Evidence Attached to the Complaint**

Under FRCP 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This requires a coherent, plausible factual narrative that gives the defendant fair notice of the claims being asserted and the grounds upon which they rest. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While generally a court must accept the factual allegations of the complaint as true on a 12(b)(6) motion, the court is not required to accept as true any allegations in the complaint that are contradicted by documents incorporated by reference or attached as exhibits. *See 380544 Canada, Inc. v. Aspen Tech., Inc*., 544 F. Supp. 2d 199, 215 (S.D.N.Y. 2008) ("Where the plaintiff's allegations are contradicted by a document that the complaint incorporates by reference, the document controls."). "Thus, a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

Here, the Complaint alleges the principal balance under the loan is $1,570,182.04 (Compl. ¶ 41), but in the Notice of Default letter attached to the Complaint as Exhibit I (Doc. No. 1-9), the principal balance is $618,357.43 (and the total sum listed is $688,265.69). Plaintiff does not allege any intervening advance, modification, or acceleration that would justify a doubling of the principal balance in a six-month span. The discrepancy between the Complaint and Exhibit I renders the allegation of a $1.5 million balance vague and confusing at best, and false at worst. Further, the 2021 dates listed in the Notice of Default do not correspond to the allegations regarding a March 2024 maturity date and default. (*Compare* Ex. I (Doc. No. 1-9) *with*

8

Compl. ¶ 36.) Accordingly, the Complaint fails to state a plausible claim for relief or properly notify Defendants of the claims under the pleading standards of FRCP 8, and dismissal is appropriate under FRCP 12(b)(6).

### B. **Plaintiff Fails to Allege Breach of Defendant Khomari's Limited Guaranty**

In addition, the Complaint fails to assert any claims against the individual defendant Khomari and he should be dismissed from the proceedings. The Complaint asserts a claim for mortgage foreclosure and nothing more. The Complaint does not assert any breach of guaranty against Khomari, or contain any allegations of the same, and Khomari is not named in any of Plaintiff's demands under the "Wherefore" clause. In fact, outside of allegations regarding parties, jurisdiction and venue,[4] the "Guarantor" is only mentioned in three allegations in the whole Complaint, none of which assert any claims against Khomari. (*See* Compl. ¶¶ 30, 39, and 50.)[5] Moreover, as detailed *infra* in Section II. C., Khomari's obligations as a guarantor are limited and the "Base Recourse" referenced in the Guaranty attached to the Complaint is "0% of the Loan Amount." (Compl. Ex. B at § 3.02 & Art. I; Ex. E at § 3.) As such, Plaintiffs have entirely failed to state any claims against Khomari and he should be dismissed from the action.

---

[4] *See* Compl. ¶¶ 8, 16-18 and 20.
[5] Compl. ¶ 30 ("To further secure certain obligations under the Loan Documents, Guarantor executed that certain Guaranty, dated to be effective as of February 7, 2019, pursuant to which Guarantor guaranteed certain of Borrower's obligations, as described therein. A true and accurate copy of the Guaranty is attached hereto as Exhibit E."); *id* ¶ 39 ("By letter dated August 7, 2024 (the "Notice of Default"), Lender notified Borrower and Guarantor of Borrower's default under the Loan Documents due to Borrower's failure to pay the entire outstanding Indebtedness and all other amounts due and owing under the Note and other Loan Documents by the Maturity Date."); *Id.* ¶ 50 ("Lender specifically reserves the right to pursue a temporary injunction, to seek appointment of a receiver, or to seek other relief with respect to its rights under the Loan Documents. Pursuant to N.Y. Real Prop. Acts. Law §1371, Lender reserves the right to move the Court to enter final judgment against Borrower or any other liable party, including Guarantor, for any residue of the debt under the Note and other Loan Documents remaining unsatisfied after the foreclosure sale of the Property is completed.").

### C. **Plaintiff Fails to Allege a Basis for a Deficiency Judgment**

Finally, Plaintiff's attempt to plead a claim against Borrower or Guarantor for a deficiency judgment must be dismissed. Plaintiff reserves the right to, among other things, "move the Court to enter final judgment against Borrower or any other liable party, including Guarantor, for any residue of the debt under the Note and other Loan Documents remaining unsatisfied after the foreclosure sale of the Property is completed," (Compl. ¶ 50) and requests a judgment "[f]inding that Lender has preserved its rights to pursue any deficiency that may exist under the Note or other Loan Documents after application of the proceeds of the foreclosure sale pursuant to N.Y. Real Prop. Acts Law §1371 and may move the Court to enter final judgment against Borrower for such deficiency" (Compl. p. 12).

Deficiency judgments are governed by Real Property Actions and Proceedings Law ("RPAPL") § 1371. RPAPL § 1371(1) states:

> If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided.

However, in this case, as set forth below, the subject Loan Documents are "Limited Recourse Generally," which make clear that there are very limited circumstances under which Borrower and Guarantor can be held personally liable beyond the mortgaged Property. Plaintiff has not pled any facts that implicate the limited circumstances where Defendants might be liable for certain specific losses. The Loan Documents prove Defendants cannot be held "liable for the payment of the debt secured by the mortgage" such that they would be responsible under RPAPL § 1371 for "the whole residue, or so much thereof as the court may determine to be just

10

and equitable, of the debt remaining unsatisfied" at any foreclosure sale at the conclusion of this case.

Specifically, Article 3.01 of the Loan Agreement attached to the Complaint as Exhibit B (Doc. No. 1-2) entitled "Limited Recourse Generally," states the following:

> Except as otherwise provided in this Article III, none of Borrower or any member or limited partner of Borrower (if applicable) will have any personal liability under the Note, this Loan Agreement or any other Loan Document for the repayment of the Indebtedness or for the performance of or compliance with any other obligations of Borrower under the Loan Documents, *and Lender's only recourse for the satisfaction of the Indebtedness and the performance of such obligations will be Lender's exercise of its rights and remedies with respect to the Mortgaged Property and to any other collateral held by Lender as security for the Indebtedness*. This limitation on Borrower's liability will not limit or impair Lender's enforcement of its rights against any Guarantor.

(*See* Loan Agreement at § 3.01 (Doc. No. 1-2).)  Article 3.02 of the Loan Agreement, entitled "Base Recourse," then states: "Borrower will be personally liable to Lender for the Base Recourse specified in Article I ('Base Recourse'), plus any other amounts for which Borrower has personal liability under this Article III."  (*Id*. at § 3.02.)  Turning to Article I for the definition of the term "Base Recourse" leads to the unambiguous statement that Borrower's personal liability is "[a] portion of the Indebtedness equal to **0%** of the Loan Amount (*see Article III*)." (*Id.* at p. 1 (emphasis in original)).

Articles 3.03 and 3.04 of the Loan Agreement state circumstances under which "Borrower will be personally liable to Lender for the repayment of a *portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of the occurrence of*" certain events.  (*Id*. at pp. 3-5 (emphasis added)); *see also id*. at p. 5 (Section 3.04 of the Loan Agreement stating that "Borrower will be personally liable to Lender" for the "performance of, and the cost to Lender of" certain specified events set forth therein).  Thus, neither Article 3.03 nor Article 3.04 of the Loan Agreement make the Borrower liable for any deficiency under RPAPL § 1371 -- rather, any

11

personal liability of the Borrower is tied to specific losses, costs or expenses incurred by the mortgagee related to certain specified events which the mortgagee would have to plead and prove.

Article 3.05 of the Loan Agreement contains the only circumstances under which the loan would become "Full Recourse" to the Borrower. (*See id.* at p. 6.) Article 3.05 of the Loan Agreement, entitled "Full Recourse," states:

> "Borrower will become personally liable to Lender *for the repayment of all the Indebtedness* upon the occurrence of any of the following:
>
> (a)      Borrower fails to comply with Section 6.13.
>
> (b)      A Transfer that is an Event of Default under Section 7.02 occurs, other than a Transfer set forth in Section 3.03(g) (for which Borrower will have personal liability for Lender's loss or damage); provided, however, that Borrower will not have any personal liability for a Transfer consisting solely of the involuntary removal or involuntary withdrawal of a general partner in a limited partnership or a manager in a limited liability company.
>
> (c)      There was fraud or intentional written material misrepresentation by Borrower, any Affiliate, or any employee of Borrower in connection with the application for or creation of the Indebtedness or there is fraud in connection with any request by Borrower or Guarantor for any action or consent by Lender.
>
> (d)      A Bankruptcy Event.

(*Id.*) (emphasis added).

Suffice it to say for present purposes, whatever the events are or may be that might trigger the "Full Recourse" liability of the Borrower under the loan documents, no such events are pled in the Complaint. *See generally* Compl. Thus, whatever limited obligation Borrower could have to repay "all the Indebtedness" in accordance with the subject loan documents, Plaintiff has not pled

12

sufficient facts in the Complaint for the Court to conclude that the conditions precedent to such an obligation have been met.[6]

Similarly, the limitation of liability provisions contained in Article III of the Loan Agreement, which apply to the Borrower, have also been incorporated into the Guaranty, thereby limiting the Guarantor's liability for any deficiency judgment to the same extent as the Borrower. (Compl. Ex. E (Doc. No. 1-5).) Section 3(a)(i) of the Guaranty provides: "Guarantor absolutely, unconditionally, and irrevocably guarantees to Lender each of the following … (i) the full and prompt payment when due, whether at the Maturity Date or earlier, by reason of acceleration or otherwise, of all amounts *for which Borrower is personally liable under Article III of the Loan Agreement*." (*See id*. at p. 1) (emphasis added). Section 3(a)(i) of the Guaranty, therefore, expressly incorporates the provisions of Article III of the Loan Agreement, cited *supra*, thereby limiting the Guarantor's liability under the Guaranty to the same extent as the Borrower under the Loan Agreement.

Thus, despite the clear limitations in the subject Loan Documents with respect to the Defendants' full recourse liability, Plaintiff has not alleged in the Complaint any facts that would warrant the entry of a deficiency judgment against any of the Defendants. The Loan Documents provide in clear terms for a deficiency judgment to be issued only in the above noted, very limited circumstances. The Loan Documents, of course, must be interpreted in accordance with their clear and unambiguous terms. *See, e.g., International Pathways Inc. v. University of Queensland*, 193 A.D.3d 459, 461, 141 N.Y.S.3d 709 (1st Dep't 2021) ("The contract language is clear and unambiguous, so that its interpretation 'is a question of law for the court, and the provisions of the

---

[6] Other provisions of the loan documents make clear that Article III of the Loan Agreement limits the Borrower's liability in connection with the subject debt. *See* Note at § 7 (Doc. No. 1-2) (entitled "Personal Liability"; "The provisions of Article III of the Loan Agreement are incorporated by reference into this Note to the same extent and with the same force as if fully set forth in this Note.").

13

contract delineating the rights of the parties prevail over the allegations set forth in the complaint."). Accordingly, Plaintiff's attempt to demand a deficiency judgment at this juncture must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Complaint be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) and that the Court grant such other and further relief it deems just, proper and equitable.

Dated: Bronxville, New York
        May 1, 2025

**BAUMAN LAW GROUP P.C.**

By: */s/ Timothy C. Bauman*
Timothy C. Bauman
SDNY Bar ID: TB2536
141 Parkway Road, Suite 8
Bronxville, NY 10708
Tel:  (914) 337-1715
Fax:  (914) 361-4008
tbauman@baumanlawgroup.com
*Attorneys for Defendants Kunba, LLC
and Robert Khomari*

**Attorney Certificate of Word Count**

I hereby certify that the word count of this Memorandum of Law complies with the word limits of S.D.N.Y. Local Rule 7.1. According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text exclusive of the material omitted under Rule 7.1 is 4,660 words.

By: */s/ Timothy C. Bauman*